STATE of Alaska, William Sheffield, Governor of the State of Alaska, Marshall Lind, Commissioner of Education, Eleanor Andrews, Commissioner of Administration, Emil Notti, Commissioner of Community & Regional Affairs, Loren Lounsbury, Commissioner of Commerce & Economic Development, Milton Barker, Acting Commissioner of Revenue, all in their official capacities, Appellants, Cross-Appellees,

v.

FAIRBANKS NORTH STAR BOROUGH and Fairbanks North Star Borough School District, Appellees, Cross-Appellants.

Nos. S–2122, 2141.

Supreme Court of Alaska.

May 6, 1987.

Robert M. Maynard, Asst. Atty. Gen., Grace Berg Schaible, Atty. Gen., Juneau, for appellants/cross-appellees.

Mark Andrews, Asst. Borough Atty., Gordon W. Duval, Staff Atty., Paul H. Cragan, Borough Atty., Fairbanks, for appellees/cross-appellants.

Before BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

PER CURIAM.

The judgment is affirmed on the opinion of the superior court, attached as appendix, except as noted hereafter. The traditional rule that judicial decisions should apply retroactively governs this case as the resolution of the issue presented was foreshadowed by prior opinions of the state attorney general, there has been no irremediable reliance on the statute in question, and inequity would result if only the appellees were to receive the benefit of this ruling. *See Commercial Fisheries Entry Commission v. Byayuk,* 684 P.2d 114, 117 (Alaska 1984).

Accordingly, we remand this case to the superior court with instructions to modify its judgment to allow for total retroactivity.

AFFIRMED on the merits, REMANDED as to effect.

RABINOWITZ, C.J., not participating.

APPENDIX

FAIRBANKS NORTH STAR BOROUGH, and FAIRBANKS NORTH STAR BOROUGH SCHOOL DISTRICT, Plaintiffs,

vs.

STATE OF ALASKA, WILLIAM SHEFFIELD, Governor of the State of Alaska, MARSHALL LIND, Commissioner of Education, ELEANOR ANDREWS, Commissioner of Administration, EMIL NOTTI, Commissioner of Community & Regional Affairs, LOREN LOUNSBURY, Commissioner of Commerce & Economic Development, MILTON BARKER, Acting Commissioner of Revenue, all in their official capacities, Defendants.

Case No. 4FA–86–2528 Ci.

IN THE SUPERIOR COURT FOR THE STATE OF ALASKA FOURTH JUDICIAL DISTRICT

OPINION

This case comes before the court on the State's motion for summary judgment and the Borough's cross-motion. The motions require the court to resolve questions of constitutional and statutory interpretation. The facts are undisputed.

In December of 1985, Governor Sheffield submitted his proposed budget for fiscal year 1987 (FY87) to the legislature. His proposal was based on the Department of Revenue's December revenue forecast, which predicted that $2718.9 million in unrestricted funds would be available for FY87.

On March 12, 1986, the Department issued a new forecast, which projected a drop in revenue of $641.3 million. The decline was due to sharply reduced oil prices. Revenues derived from oil comprise approximately eighty-five percent of the State's income.

The budget passed by the legislature in early June of 1986 was approximately $400 million less than that submitted by the Governor in December. The Governor then exercised his veto power to further reduce appropriations to within $40 million of the June revenue projection. The budget was approved with item vetoes on June 9, 1986.

On July 16, 1986, the Department of Revenue issued the June forecast, which projected a further decline of $857.2 million, for a total projected deficit of $897.2 million. At about the same time, the final accounting for FY86 was completed. Funds which remained unspent under the 1986 appropriations—the unrestricted surplus—totalled $17.3 million. That amount lapsed back into the general fund.

To cope with the substantial projected deficit, the Governor decided to act without recalling the legislature for a special session. He announced that he would restrict the obligation of revenues set aside by appropriation for FY87. On August 22, 1986, he issued Administrative Order No. 90, which stated that he had determined it to be in the State's best interest to withhold expenditure authority for certain appropriations.[1] His purpose was to avoid deficit spending which is prohibited by Article IX, sec. 8 of the Alaska Constitution.

Under Administrative Order No. 90, expenditure authority for different classes of appropriations was restricted by different percentages. Some appropriations were unrestricted. Appropriations which were intended to provide funds for municipalities were restricted ten percent; the ten percent restriction on those appropriations is at issue in this case.[2] Expenditures of

---

1. On December 8, 1986, Governor Cowper issued Administrative Order No. 91 for the same purpose and under the same authority cited in Administrative Order No. 90. Governor Cowper made a ten percent actual cut in expenditures for school debt retirement.

2. Those appropriations included amounts set aside for municipal grants, school bond debt reimbursement, State shared revenue, municipal assistance, day care assistance, public school foundation account, tuition for military schools, education of youth in detention, grants for community schools and transportation.

appropriations for State agencies were limited by fifteen percent and those for capital projects sixty-five percent. The restrictions totalled approximately $450 million.

The Governor based his authority to issue Administrative Order 90 on Article III, secs. 1 & 24 of the Alaska Constitution[3] and AS 37.07.080(f) and (g).[4] The central question in this case is whether AS 37.07.-080(g)(2) is constitutional.

AS 37.07.080(g)(2), a provision of the Executive Budget Act, provides that:

> (g) The governor may direct the withholding or reduction of appropriations to a state agency at any time during the fiscal year only if the governor determines that
>
> . . . .
>
> (2) estimated receipts and surpluses will be insufficient to provide for appropriations.

"Appropriation," for the purposes of the Executive Budget Act, is defined to mean "a maximum amount available for expenditure by a State agency for a stated purpose set out in an appropriation act." AS 37.07.-120(3).

The Borough has argued that AS 37.07.-080(g)(2) is unconstitutional for two reasons: first, because it delegates power over appropriations, a power which can only be exercised by the legislature in accord with the procedures mandated by Article II of the Alaska Constitution; second, because the statute lacks standards to guide the exercise of administrative discretion. In either case, the Borough argues that the statute violates the principle of separation of powers.

The doctrine of separation of powers is implicit in the Alaska Constitution. As Justice Brandeis said, the doctrine was adopted

> not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was not to avoid friction, but, by means of the inevitable friction incident to the distribution of the government powers among three departments, to save the people from autocracy.

*Myers v. United States,* 272 U.S. 52, 293, 47 S.Ct. 21, 85, 71 L.Ed. 160, 242–243 (1926). The question then is whether AS 37.07.080(g)(2) permits the arbitrary exercise of power.

On its face, AS 37.07.080(g)(2) purports to endow the Governor with discretion to reduce appropriations—in effect, to amend the budget—when anticipated revenues appear inadequate to meet appropriation levels. The State contends that the legislature intended only to delegate discretion over expenditures in such a situation. This interpretation would comport with prior decisions which have held that the legislature may delegate discretion to the executive to spend or not spend appropriated funds. The existence of such discretion is a question of legislative intent, as manifested by the language and legislative history of the statute. *Ellis v. City of Valdez,* 686 P.2d 700, 705 (Alaska 1984).

This court is under a duty to construe a statute to avoid constitutional infirmity where possible. However, it cannot go so far as to redraft defective legislation. *State v. Campbell,* 536 P.2d 105, 110–111 (Alaska 1975). The limiting construction suggested by the State cannot save this statute. AS 37.07.080 fails because it authorizes the exercise of sweeping power over the entire budget with no guidance or

---

**3.** Art. III, sec. 1 provides that:

> The executive power of the State is vested in the governor.

Art. III, sec. 24 provides that:

> Each principal department shall be under the supervision of the governor.

**4.** AS 37.07.080(f) and (g) provide as follows:

> (f) The office shall report quarterly to the governor and the legislature on the operations of each state agency, relating actual accomplishments to those planned and modifying, if necessary, the operations plan of any agency for the balance of the fiscal year.
>
> (g) The governor may direct the withholding or reduction of appropriations to a state agency at any time during the fiscal year only if the governor determines that
>
> (1) the planned expenditures can no longer be made due to factors outside the control of the state which make the expenditure factually impossible; or
>
> (2) estimated receipts and surpluses will be insufficient to provide for appropriations.

limitation. The statute is thus an unconstitutional delegation of legislative power.

The Alaska court has never applied the delegation doctrine to a statute of comparable breadth. This is not a case where the legislature has delegated broad authority to an agency with expertise to regulate a narrowly defined field. *See Boehl v. Sabre Jet Room, Inc.*, 349 P.2d 585, 588 (Alaska 1960). Nor is this a case where the Act's purpose and standards are explicit and detailed. *See Walker v. Alaska State Mortgage Association*, 416 P.2d 247 (Alaska 1966). Indeed, the legislature has declined to provide even the general limitations and policy statements which were sufficient to guide administrative discretion involved in making loans to promote economic development. *De Armond v. Alaska State Development Corporation*, 376 P.2d 717, 723 (Alaska 1962). Surely a delegation of authority over the entire budget deserves no less.

The delegation doctrine was developed in the federal courts; therefore, it may be useful to assess this statute under the standard articulated in a recent federal case, *Synar v. United States*, 626 F.Supp. 1374, 1383–89 (D.D.C.1986). In *Synar*, the court found that a limited delegation of power over appropriations was not an unconstitutional delegation of legislative power. In that court's view, the constitutionality of a delegation is determined on the basis of the scope of the power delegated and the specificity of the standards to govern its exercise. "When the scope increases to immense proportions ... the standards must be correspondingly more precise." *Id.* at 1386. The essential inquiry is whether the specified guidance "sufficiently marks the field within which the administrator is to act so that it may be known whether he has kept within it in compliance with the legislative will." *Id.* at 1387 *quoting Yakus v. United States*, 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834, 849 (1944).

The statute at issue in *Synar* permitted administrators to affect spending levels over a specified range of federal programs and only to a limited degree. *Id.* at 1386. The Act provided explicit direction as to the procedures to be followed and established basic assumptions, definitions and criteria to guide the administrators. *Id.* at 1387–89. The court held that Congress had provided an adequate "intelligible principle to guide and confine administrative decision making." *Id.* at 1389.

The detailed direction described in *Synar* stands in sharp contrast to the statute at issue here. The legislature has articulated no principles, intelligible or otherwise, to guide the executive. Under AS 37.07.-080(g)(2), the governor decides when projected revenues are inadequate to meet appropriations.[5] Once he makes that determination, he may or may not assume authority under the statute. If he decides to act, he has total discretion as to which appropriations to cut and to what extent. The statute does not expressly require him to limit his cuts to the extent of the shortfall nor does it provide for adjustment of the cuts to the actual revenues received.

Most importantly, the executive is provided with no policy guidance as to how the cuts should be distributed. The State conceded at oral argument that the statute would permit the Governor to cut the entire budget for a particular department or project. Indeed, nothing in the statute would prevent him from effectively vetoing a project where his veto had previously been overridden. An appropriation could be eliminated entirely, cut in half or left untouched. In short, the effect of an exercise of authority under AS 37.07.080(g)(2) is no more predictable than the identity and priorities of our next governor.

This memorandum is not intended to impugn the motives or good faith of Governors Sheffield and Cowper. Both have interpreted the grant of authority under AS 37.07.080(g)(2) narrowly and have acted in accord with that narrow interpretation.

---

**5.** Before the Governor can take any action under AS 37.05.159, the statute creating a reserve for emergency operating expenses, he must make an express finding that there is an "imminent danger" that the State will be unable to meet its operating budget expenses. AS 37.05.-159(b)(1). AS 37.07.080(g)(2) does not explicitly require a similar finding.

However, the issue in this case is not what has been done under the statute; rather it is what can be done. As one court has said,

> [W]e find nothing in [the statute] whatsoever to indicate that the legislature was granting the authority to be exercised only in the circumstances and under the conditions which respondent says it has imposed on itself. As we read the section, the grant is absolute and totally devoid of restraints, direction or rules. Accordingly, the fact that respondent acted only under certain self-imposed restraints can in no way serve to supply what has been omitted.

*State ex rel. Holmes v. State Board of Finance*, 69 N.M. 430, 367 P.2d 926, 932 (1961). The limited exercise of authority undertaken in Administrative Orders 90 and 91 cannot save a statute which amounts to legislative abdication.

Nevertheless, the actions taken by the governors are relevant to the final issue in the case: the effect of this decision holding that AS 37.07.080(g)(2) is an unconstitutional delegation of legislative power. The State contends that this ruling should be given only prospective effect.

The Supreme Court has identified four conditions indicating the propriety of non-retroactive treatment in civil cases: 1. the holding is one of first impression ... and was not foreshadowed in earlier decisions; 2. there has been justifiable reliance on an alternative interpretation of the law; 3. the purpose and intended effect of the holding is best accomplished by prospective application; 4. undue hardship would result from retroactive application. *Plumley v. Hale*, 594 P.2d 497, 503 (Alaska 1979) (citations omitted).

In this case, the factors listed above favor partial prospective application of the holding in this case. The decision is one of first impression which was not clearly foreshadowed in prior Alaska cases applying the delegation doctrine. The governors acted reasonably in justifiable reliance on the statute when they issued the Administrative Orders; it is probable that the legislature and the public have relied on those

Orders as well. In addition, retroactive application would not further the purpose of this ruling. This court does not hold that the legislature could not draft a statute which would permit the executive to exercise limited authority to control expenditures as Governors Cowper and Sheffield have done. Rather this court holds that the legislature unconstitutionally delegated legislative authority when it enacted AS 37.07.080(g)(2) without providing any meaningful guidance.

In the final analysis, the determination of the effect of this decision must be guided primarily by equitable considerations: what is necessary, what is fair, and what is workable. *Id.* at 504, n. 28 (citation omitted). The court is aware that the governor, the legislature and the public are now attempting to cope with the effects of diminished revenues. Stability is an important factor in making that adjustment. Total invalidation of Administrative Orders 90 and 91 now would only inject additional uncertainty into an already difficult calculation. The court notes that others in positions similar to plaintiffs have elected not to join this suit. As a practical matter then, it would be unduly burdensome, indeed unnecessary, to require the legislature to reconsider the entire $450 million deficit that the Administrative Orders served to remedy. The court therefore holds that this decision applies only prospectively except as to the plaintiffs in the case at bar. Whether plaintiffs ultimately obtain funding depends, of course, on legislative action or inaction.

SUMMARY

1. AS 37.07.080(g)(2) is unconstitutional.

2. Insofar as they are applicable to plaintiffs Fairbanks North Star Borough and Fairbanks North Star Borough School District, Administrative Orders Nos. 90 and 91 are set aside.

3. In light of the foregoing, it is unnecessary for the court to reach the other issues raised in plaintiffs' complaint.

DATED at Fairbanks, Alaska this 6th day of April 1987.

/s/ James R. Blair
JAMES R. BLAIR
Superior Court Judge