**MUNICIPALITY OF ANCHORAGE,**
Appellant,

v.

**ANCHORAGE POLICE DEPARTMENT EMPLOYEES ASSOCIATION, and International Association of Fire Fighters, Local 1264, Appellees.**

Nos. S–4044, S–4151.

Supreme Court of Alaska.

Oct. 23, 1992.

David T. Jones, Perkins Coie, Anchorage, for appellant.

R. Brooke Holstedt, Aitchison, Hoag, Vick & Tarantino, Salem, Oregon, and Mary–Ellen Zalewski, Lane, Powell, Spears & Lubersky, Anchorage, for appellee Anchorage Police Dept. Employees Ass'n.

Charles A. Dunnagan, and James A. Gasper, Jermain, Dunnagan & Owens, P.C., Anchorage, for appellee Intern. Ass'n of Fire Fighters, Local 1264.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

RABINOWITZ, Chief Justice.

## INTRODUCTION

The primary question raised in this appeal is whether the Municipality of Anchorage's Code, which provides for final and binding interest arbitration,[1] constitutes an unconstitutional delegation of the Municipality's legislative power to an arbitrator.[2]

## FACTS AND PROCEEDINGS

The facts are undisputed. In 1975, the Municipality of Anchorage (Municipality) opted out of coverage under the Public Employment Relations Act, enacting instead a comprehensive labor ordinance in the Anchorage Municipal Code (AMC) in 1976. *See* Anch.Ord. 69–75, at § 2.300.-010–.170. Since the labor ordinance was enacted, the AMC has included a binding arbitration provision. The version of Chapter 3.70 of the AMC, governing employee relations, that is at issue in the instant case most recently was amended by the Anchorage Assembly by the passage of Anchorage Ordinance 89–46(S–1) (1989).[3]

Anchorage Municipal Code 3.70.110(A)(1) defines three classes of employees.[4] Rele-

---

1. Interest arbitration is a process in which the terms and conditions of the employment contract are established by a final and binding decision of the arbitration panel. It differs from grievance arbitration, which involves the interpretation of the employment contract to determine whether the conditions of employment have been breached.
Arvid Anderson & Loren A. Krause, *Interest Arbitration: The Alternative to the Strike,* 56 Fordham L.Rev. 153, 153 (1987) (footnotes omitted).

2. Of equal significance is whether the ordinance in question violates § 13.08 of the Municipal Charter. *See* discussion *infra.*

3. The differences between the earlier ordinance and the most recent version are not relevant for the purposes of this appeal. Both the earlier version of the ordinance, Ord. 69–75, § 2.300.-100(c)(6), and the amended code, AMC 3.70.-110(c)(9), provided that the arbitrator's decision "shall be final and binding upon the parties."

4. AMC 3.70.110 provides, in relevant part:
 A. For purposes of this section, employees perform services in one of the following three classes:
 1. services which may not be given up for even the shortest period of time;
 2. services which may be interrupted for a limited period but not for an indefinite period of time; and
 3. services in which, absent extraordinary circumstances which affect the health, safety or welfare of the public work stoppages may

vant to this appeal is the class referred to as "A.1 employees," whose services "may not be given up for even the shortest period of time." AMC 3.70.110(A)(1). Employees in the A.1 category are the police, fire protection and emergency medical services. AMC 3.70.110(B). If the Municipality and employees of an A.1 bargaining unit are unable to reach a contract agreement at least seven days before the existing agreement expires, the parties are required by AMC 3.70.110(C)(1) and (9) to submit to mandatory binding interest arbitration. The Code also prohibits employees whose positions are within the A.1 category from engaging in a strike or slowdown. AMC 3.70.120(A). Rather, in the event of impasse in the contract negotiation procedure, the parties must invoke the mediation and impasse resolution procedures of AMC 3.70.100 and .110.

For A.1 employees, the Code requires that the bargaining unit and the Municipality negotiate at least 90 days before the expiration of the contract. AMC 3.70.-90(C). If the parties have not reached an agreement 60 days before the expiration date, the Municipality's Employee Relations Board shall select a neutral mediator to mediate further negotiation sessions. AMC 3.70.100(A). If, within 30 days of the contract expiration, the parties have not arrived at an agreement, the parties must select a fact-finder as provided in AMC

3.70.100(B).[5] The fact finder must "conduct a hearing and return findings of fact concerning the specific issue in question." AMC 3.70.100(B). After the fact finder transmits the findings, the parties have fourteen days to reach an agreement before all unresolved issues must be submitted to arbitration. AMC 3.70.100(B). The Code further provides that if A.1 employees and the Municipality fail to reach an agreement within seven days of the contract expiration, all unresolved issues must be submitted for binding arbitration before the same individual who served as fact finder. AMC 3.70.110(C)(1).[6]

The Code provides that:

The decision of the arbitrator for bargaining units or portions of bargaining units within category A.1 shall be reduced to writing and shall be final and binding upon the parties. The collective bargaining agreement, in compliance with the arbitrator's decision, shall be prepared and executed by the parties. Decisions of the arbitrator may be appealed to the Superior Court for the State of Alaska only for abuse of discretion, fraud, or misconduct on the part of the arbitrator.

AMC 3.70.110(C)(9).

However, the Code does limit the scope of the arbitrator's authority in AMC 3.70.-110(C)(7),

---

be sustained for extended periods without serious effects on the public.

 B. The class in A.1 of this section is composed of police, fire protection and emergency medical services. . . .

5. AMC 3.70.100(B) provides:

If, on the 30th day prior to the contract expiration date, a collective bargaining agreement has not been executed between the parties, the parties shall select a fact-finder from a list of nine names, three names from Alaska and six names from outside, submitted by the American Arbitration Association unless otherwise mutually agreed to by the parties, to conduct a hearing and return findings of fact concerning the specific issue in question. The fact-finder shall have the power to determine all relevant facts including but not limited to workload, productivity, economic feasibility, cost of living, the parties' bargaining history, relevant market comparisons in the public sector and relevant market comparisons in the private sector taking into account the cost

of living in the markets compared, employer's past practice and impact on personnel or work place morale. The cost of the fact-finder shall be shared equally by the parties. The fact-finder shall within seven days of appointment conduct informal hearings and return his findings to the employer and bargaining representative. If, within 14 days after transmission of the findings of fact to the parties, an agreement has not been reached, the parties shall submit all unresolved matters to arbitration. Findings shall be made public upon delivery to the employer and bargaining representative. . . .

6. AMC 3.70.110(C)(1) states:

For bargaining units or portions of bargaining units within category A.1, if the parties have not reached agreement seven days prior to expiration of the contract, the issue in dispute shall be submitted to arbitration before the party selected as fact-finder in accordance with Section 3.70.100(B).

Scope of arbitrator's authority. The arbitrator shall be limited in his authority to:

A. Selection on an article-by-article basis of either party's last best offer submitted to him by each of the parties to the collective bargaining process; and

B. In exercising his discretion, the arbitrator shall base his decisions solely on the facts determined in accordance with 3.70.100(B) and applicable law.

In December 1989, the Municipality filed a complaint for declaratory relief in superior court, seeking to have the binding arbitration provision of the Code declared unconstitutional. At the time the complaint was filed, the Municipality and the Anchorage Police Department Employees Association (APDEA) were in the process of negotiating a new collective bargaining agreement. Negotiations between the Municipality and the International Association of Fire Fighters, Local 1264 (IAFF) were also anticipated in January, 1990. The Municipality argued that the compulsory binding interest arbitration provisions constituted an impermissible delegation of the Anchorage Assembly's legislative authority to a politically unaccountable private third party. Additionally, the Municipality alleged that the provisions in question were unconstitutional because they provided no meaningful standards to guide the arbitrator and did not provide for meaningful judicial review.

The Municipality moved for summary judgment, as did APDEA and IAFF. The superior court, concluding that the binding interest arbitration provisions of the Code were constitutional, granted summary judgment in favor of APDEA and IAFF. The superior court also awarded 100% of requested attorney's fees, totalling $22,634.50, to APDEA and 70% of IAFF's requested attorney's fees, totalling $6,309.75. The Municipality appeals the grants of summary judgment in favor of APDEA

and IAFF and the award of full attorney's fees to APDEA.

DISCUSSION

I. Does AMC 3.70.110, providing for binding interest arbitration, constitute an unconstitutional delegation of legislative authority?

The Municipality argues that the Code's binding interest arbitration provisions, delegating legislative authority to a politically unaccountable arbitrator, violate the Alaska Constitution. Alternatively, the Municipality contends that the Code is unconstitutional because its provisions fail to provide standards to guide the arbitrator.

■ We begin our analysis with the presumption that the Code provisions at issue are constitutional.[7] *State v. Fairbanks North Star Borough,* 736 P.2d 1140, 1142 (Alaska 1987); *City of Anchorage v. Richardson Vista Corp.,* 17 Alaska 23, 242 F.2d 276, 285 (9th Cir.1957) ("where an ordinance is passed relating to a matter within the legislative power of the municipality all presumptions are in favor of its constitutionality, and reasonableness"). Further, as we stated in *Fairbanks North Star Borough,* "[t]his court is under a duty to construe a statute to avoid constitutional infirmity where possible." 736 P.2d at 1142.

Our analysis of this issue addresses three subsidiary questions.

A. *Is it permissible for the Municipal Assembly to delegate its legislative power?*

■ The Municipal Assembly's delegation of its legislative power is not unconstitutional per se. The Alaska Constitution, Article X, § 2 provides in part that "[a]ll local government powers shall be vested in boroughs and cities." This grant of powers is broad, as evidenced by the Alaska Constitution, Article X, § 1, which states that "[a] liberal construction shall be given to the powers of local government units."

---

7. In deciding the constitutionality of AMC 3.70.110, this court is presented with a question of law concerning which we will exercise independent judgment. *See 8,960 Square Feet v. Dept. of Transp.,* 806 P.2d 843, 845 (Alaska 1991).

The powers of the Municipal Assembly are defined by the Alaska Constitution, Art. X, and the Home Rule Charter of the Municipality of Anchorage. Neither the Municipal Charter nor the Alaska Constitution expressly limit the Assembly's authority to delegate its legislative authority. Rather, the Alaska Constitution, Art. X, § 11 states, "[a] home rule borough or city may exercise all legislative powers not prohibited by law or Charter." It follows that the right of the Assembly to delegate powers to govern the affairs of the municipality will not be strictly construed, for "[w]ithout the power to delegate duty and discretion the affairs of the [c]ity could not be carried on." *City of Anchorage v. Richardson Vista Corp.*, 242 F.2d 276, 285 (9th Cir.1957).

The Municipality asserts that the Code delegates the Assembly's legislative power to a private individual who is not politically accountable. In support of this position, the Municipality relies on the preamble to the Municipal Charter which states one purpose of the establishment of the Municipality was "to form more responsive government and to secure maximum local control of local affairs." However, we have rejected the non-delegation doctrine in *Kenai Peninsula Borough School District v. Kenai Peninsula Education Ass'n* where we noted:

> While courts in an earlier era often held laws unconstitutional on the ground that they delegated legislative power to private persons or groups ... the trend has been to uphold such delegations, even when the power is delegated to a group with an economic interest in the decisions to be made.

572 P.2d 416, 420 (Alaska 1977) (citations omitted).

*Kenai Peninsula* comports with earlier cases in which we upheld delegations of legislative authority. *See Boehl v. Sabre Jet Room, Inc.*, 349 P.2d 585, 588 (Alaska 1960) (declaring that the delegation of state legislative powers is not unconstitutional; "a strict theory of separation of powers ignores [the] realities and the practical necessities of government.... The real ques-

tion, then, is not whether there may be delegation. Rather it is how far the legislature may go in delegating power to an agency...."); *Walker v. Alaska State Mortgage Ass'n*, 416 P.2d 245, 254 (Alaska 1966) (holding that creation of Alaska State Mortgage Association was not an unconstitutional delegation of legislative authority to provide for public health and welfare); *DeArmond v. Alaska State Dev. Corp.*, 376 P.2d 717, 722–23 (Alaska 1962) (finding that creation of the Alaska State Development Corporation which provided development loans to businesses was not an improper delegation of legislative authority).

The Supreme Judicial Court of Massachusetts focused on what we believe is the principal consideration, explaining "[w]e are less concerned with the labels placed on arbitrators as public or private, as politically accountable or independent, than we are with the totality of the protection against arbitrariness provided in the statutory scheme." *Town of Arlington v. Board of Conciliation and Arbitration*, 370 Mass. 769, 352 N.E.2d 914, 920 (1976) (citation omitted). This general approach is supported by a majority of courts which have addressed the question. These courts have held that the delegation of municipal power to an arbitrator is not an unconstitutional delegation of legislative power. *See, e.g. Fire Fighters Union, Local 1186 v. City of Vallejo*, 12 Cal.3d 608, 116 Cal.Rptr. 507, 517 n. 13, 526 P.2d 971, 981 n. 13 (1974); *Town of Arlington v. Bd. of Conciliation and Arbitration*, 370 Mass. 769, 352 N.E.2d 914 (1976); *City of Biddeford v. Biddeford Teachers Ass'n*, 304 A.2d 387 (Me.1973); *City of Detroit v. Detroit Police Officers Ass'n*, 408 Mich. 410, 294 N.W.2d 68 (1980), *appeal dismissed*, 450 U.S. 903, 101 S.Ct. 1337, 67 L.Ed.2d 326 (1981); *City of Richfield v. Local No. 1215, Int'l Ass'n of Fire Fighters*, 276 N.W.2d 42 (Minn.1979); *City of Amsterdam v. Helsby*, 37 N.Y.2d 19, 371 N.Y.S.2d 404, 332 N.E.2d 290 (1975); *City of Rocky River v. State Employment Relations Bd.*, 43 Ohio St.3d 1, 539 N.E.2d 103, 111 (1989); *Harney v. Russo*, 435 Pa. 183, 255 A.2d 560 (1969); *City of East Providence v. Local 850, Int'l Ass'n of Fire Fighters, AFL–*

*CIO*, 117 R.I. 329, 366 A.2d 1151 (1976); *City of Spokane v. Spokane Police Guild*, 87 Wash.2d 457, 553 P.2d 1316 (1976) (*en banc*); *State ex rel. Fire Fighters Local No. 946 v. Laramie*, 437 P.2d 295 (Wyo. 1968).[8]

Thus, we conclude that the questioned delegation of the Assembly's legislative power to an arbitrator is not unconstitutional per se.[9]

*B. Do Sufficient Standards Exist to Guide the Arbitrator's Decision and to Guard Against Arbitrary Action on the Arbitrator's Part?*

### 1) The Theory

■ A significant component of our analysis of the delegation issue presented in this appeal centers on the question whether sufficient standards exist to guide the arbitrator's exercise of the authority delegated by the Assembly. "The essential inquiry is whether the specified guidance 'sufficiently marks the field within which the administrator is to act so that it may be known whether he has kept within it in compliance with the legislative will.'" *State v. Fairbanks North Star Borough*, 736 P.2d 1140, 1143 (Alaska 1987) (quoting *Synar v. United States*, 626 F.Supp. 1374, 1383–89 (D.D.C.1986) (quoting *Yakus v. United States*, 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944))).[10] This question involves a sliding-scale analysis: "When the scope increases to immense proportions ... the standards must be correspondingly more precise." *Fairbanks North Star Borough*, 736 P.2d at 1143 (quoting *Synar*, 626 F.Supp. at 1386).

In *Fairbanks North Star Borough*, we struck down a statutory provision allowing the governor to withhold or reduce appropriations to a state agency at any time during the fiscal year if the governor determined that estimated receipts and surpluses would be insufficient to provide for appropriations. We found that "[t]he legislature has articulated no principles, intelligible or otherwise, to guide the executive.... Most importantly, the executive is provided with no policy guidance as to how the cuts should be distributed." 736 P.2d at 1143. We contrasted the delegation in *Fairbanks North Star Borough* with that in *Synar*. In *Synar*, the statute permitted administrators to affect spending levels over a speci-

---

**8.** There are court decisions holding that the determination of salaries is a legislative function which is not delegable to an arbitrator. *Greely Police Union v. City Council of Greely*, 191 Colo. 419, 553 P.2d 790 (1976); *Salt Lake City v. Int'l Ass'n of Firefighters, Locals 1645, 593, 1654, and 2064*, 563 P.2d 786 (Utah 1977); *City of Sioux Falls v. Sioux Falls Firefighters*, 89 S.D. 455, 234 N.W.2d 35 (1975). See also Chief Justice Moyers' opinion in *Rocky River v. Employment Relations Board*, 39 Ohio St.3d 196, 530 N.E.2d 1 (1988), *rev'd*, 43 Ohio St.3d 1, 539 N.E.2d 103 (1989) (court held binding mandate was not an unconstitutional delegation as it serves the purpose of promoting orderly public sector labor relations).

**9.** The Municipality has virtually conceded this point. Before the superior court, the Municipality stated,

Now our problem is not with binding interest arbitration as a concept. It isn't necessary for the court to find that binding interest arbitration per se is invalid. Our problem is with the way it has been done with this ordinance. The ordinance simply does not provide the necessary standards and safeguards to make that delegation of authority valid.

The Municipality also contends that AMC 3.70.110(C)(9) violates the appropriate limits al-

lowed by the Charter. In this regard subsection (a) of § 13.08 of the Charter provides in part:

No payment shall be made, or obligation incurred except in accordance with appropriations. Obligations otherwise incurred are void.

However, subsection (b) of § 13.08 of the Charter further provides in relevant part that:

The Assembly by ordinance may authorize a contract, lease, or obligation requiring funds from future appropriations.

We think that subsection (b) is dispositive and thus agree with APDEA's persuasive argument that "... the assembly may, following an arbitrator's final and binding decision on the terms of a collective bargaining contract, meet that obligation through future appropriations if necessary.... Given the unequivocal language of section 13.08(b) and given that the Assembly may authorize a contract requiring funds from future appropriations, AMC 3.70.110(c)(9) is·not in conflict with the Charter and, therefore, is a constitutional delegation of the Assembly's legislative authority."

**10.** Recognizing that the delegation doctrine developed in the federal courts, we have relied on relevant federal case law and analysis. *See State v. Fairbanks North Star Borough*, 736 P.2d 1140, 1143 (Alaska 1987).

fied range of federal programs, yet only to a limited degree. The Act provided explicit direction as to the procedures to be followed and established basic assumptions, definitions, and criteria to guide administrators.[11]

Review of our decisions which have addressed delegation issues leads to the observation that whether one employs explicit or implicit standards, "[t]he basic purpose behind the nondelegation doctrine is sound: Administrators should not have unguided and uncontrolled discretionary power to govern as they see fit." 1 K. Davis, *Administrative Law*, § 3:15, at 206.[12]

### 2) The Relevant Facts Pertaining to Standards Providing Decision Making Guidance and Safeguards

Here the Municipality has delegated its legislative authority in a fairly narrow area, albeit an important one, to provide for binding interest arbitration for a limited number of public sector employees. The choice of an arbitrator is limited by Code to "a fact-finder from a list of nine names ... submitted by the American Arbitration Association unless otherwise mutually agreed to by the parties...." AMC 3.70.100(B). Further, AMC 3.70.110(C)(5) allows preemptory challenges by the respective parties. The fact-finder must "conduct a hearing and return findings of fact concerning the specific issue in question." AMC 3.70.100(B). *See New Jersey Bell Tel. Co. v. Communication Workers of America*, 5 N.J. 354, 75 A.2d 721, 731 (1950) (citing *Federal Communications Comm'n v. Pottsville Broadcasting Co.*, 309 U.S. 134, 60 S.Ct. 437, 84 L.Ed. 656 (1940)) ("The requirement of findings is far from a technicality and is a matter of substance. It has been said that it is a fundamental of fair play that an administrative judgment express a reasoned conclusion.").

The arbitrator can only determine "relevant" facts, which include "workload, productivity economic feasibility, cost of living, the parties' bargaining history, relevant market comparisons in the public sector and relevant market comparisons in the private sector taking into account the cost of living in the markets compared, employer's past practice and impact on personnel or work place morale." AMC 3.70.100(B).

---

**11.** *See Fairbanks North Star Borough*, 736 P.2d at 1143 (quoting *Synar*, 626 F.Supp. at 1386–89). *See also Walker v. Alaska State Mortgage Ass'n*, 416 P.2d 245, 254 (Alaska 1966) ("The act's purpose is explicitly stated and the Association's powers and limitations are provided for specifically. The complexity of the subject of secondary marketing facilities for housing mortgages precludes a more detailed delegation."); *Suber v. Alaska State Bond Comm'n*, 414 P.2d 546 (Alaska 1966) (delegation of legislative power where adequate standards are provided is permissible).

*Compare: Boehl v. Sabre Jet Room, Inc.*, 349 P.2d 585 (Alaska 1960). In *Boehl*, the legislature delegated to the Alcoholic Beverage Control Board the "full power, authority and control to regulate the manufacture, barter, sale and possession of intoxicating liquors." In upholding the Board's regulations prescribing standard closing hours for liquor establishments, we said:

The legislature was dealing with a business which, unlike other commercial enterprises, possesses the capacity for grave and harmful effects upon the public welfare.... It is because of this close relation to public welfare that fewer specific standards or criteria for the guidance of administrative officials are required. Where the police power of the state is so vitally involved, as it is here, it becomes imperative that those who are charged with the duty of regulating the industry have a freedom of action not restricted by limitations that may be required where other types of businesses are involved.
*Id.* at 589.

**12.** In calling for protection against unnecessary and uncontrolled discretionary power, Professor Davis continues:

The focus should not be exclusively on standards; it should be on the totality of protections against arbitrariness, including both safeguards and standards. The key should no longer be statutory words; it should be the protections the administrators in fact provide, irrespective of what the statutes say or fail to say. The focus of judicial inquiries thus should shift from statutory standards to administrative safeguards and administrative standards. As soon as that shift is accomplished, the protections should grow beyond the nondelegation doctrine to a much broader requirement, judicially enforced, that as far as is practicable administrators must structure their discretionary power through appropriate safeguards and must confine and guide their discretionary power through standards, principles, and rules.
1 K. Davis, *Administrative Law*, § 3:15, at 206–07.

As to this enumeration, the Municipality argues that consideration of these factors is discretionary since although the fact-finder has the power to determine all relevant facts, it need not do so. We reject this contention because the arbitrator's decision is required to be based on relevant facts. AMC 3.70.110(c)(7)(b). It follows therefore that the arbitrator's consideration of the "relevant facts" includes at a minimum, consideration of the factors enumerated in AMC 3.70.110(B).[13]

Further, the arbitrator's authority is clearly limited to selecting, article-by-article, either party's last best offer, and the arbitrator's decision must be based "solely on the facts determined in accordance with 3.70.100(B) and applicable law." AMC 3.70.110(C)(7)(b).[14] "When ... the statute requires arbitrators to use final offer arbitration, arbitrators exercise much more limited discretion than they do when the statute or agreement provides for conventional arbitration of both economic and non-economic issues."[15]

Moreover, the term "and applicable law," as used in AMC 3.70.110(C)(7)(B), includes the mandates of due process and the enabling legislation. The term may also include the evolving common law standards relating to an arbitrator's behavior:

> [T]he ever widening use of arbitration in labor disputes, particularly in the public sector, has resulted in the evolution of criteria which have become inherent in today's labor arbitration process.... [T]he arbitrator must act within the scope of the authority delegated to him. He must consider the public interest and the impact of his decision on the public welfare. He must act fairly and reasonably to the end that labor peace between the public employer and its employees will be stabilized or promoted.

*Superintending School Comm'n v. Bangor Educ. Ass'n,* 433 A.2d 383, 387 (Me. 1981) (*quoting Division 540, Amalgamated Transit Union, AFL–CIO v. Mercer County Improvement Auth.,* 76 N.J. 245, 386 A.2d 1290, 1294 (1978)).[16]

**13.** If a measure of discretion does exist in determining the relevant factors then we further conclude that "the vesting of such authority is within the legislative power." *New Jersey Bell Telephone,* 75 A.2d at 730, *citing State Bd. of Milk Control v. Newark Milk Co.,* 179 A. 116, 125 (E. & A.1935).

**14.** The Municipality argues the findings of fact may prove irrelevant to the last best offers as the parties may change their positions between fact-finding and arbitration. The Municipality believes the arbitrator will have "unrestricted and unreviewable" discretion because the arbitrator does not have to explain his or her ultimate choice.

This argument is flawed. First, because the arbitrator and the fact finder are the same individual, the chances are minimized that a final choice will be based on an incomplete factual assessment. Moreover, both parties have an incentive to provide a complete factual foundation for their last best offer, otherwise a party may suffer the peril of an adverse decision. Also, a party who modifies its proposals so that they are substantially less than those which were first offered may commit an unfair labor practice. *See Cuyamaca Meats, Inc. v. San Diego & Imperial Counties Butchers' & Food Employers' Pension Trust Fund,* 827 F.2d 491, 496 (9th Cir.1987), *cert. denied,* 485 U.S. 1008, 108 S.Ct. 1474, 99 L.Ed.2d 703 (1988). This minimizes the chance that an offer will not have a factual foundation.

The requirement for a written decision answers the Municipality's contention that judicial review is illusory because the arbitrator need not explain its choice. AMC 3.70.110(C)(9). Merely providing a written list of the choices made without explanation would be an abuse of discretion.

While APDEA asserts that the parties' "last best offer" will be made prior to arbitration, there is nothing in the Code mandating this, and the ability to negotiate after the start of arbitration, AMC 3.70.110(C)(3), seems to indicate otherwise. Yet, the reasons above indicate that a factual basis will exist even for a "new" last best offer.

**15.** Anderson & Krause, *supra* note 1, at 160.

**16.** *See, e.g., City of Washington v. Police Dep't,* 436 Pa. 168, 259 A.2d 437, 442 (1969) ("panels may not mandate that a governing body carry out an illegal act"); *State v. Pub. Safety Employees Ass'n,* 798 P.2d 1281, 1287–88 (Alaska 1990) (common law allows court to use arbitrary and capricious standard of review for interest arbitration); *City of Buffalo v. New York State Pub. Employment Relations Bd.,* 80 Misc.2d 741, 363 N.Y.S.2d 896 (Sup.Ct.1975) (courts have the inherent power to review an action to determine if it was *ultra vires*). Also, the statute plainly contemplates that the arbitrator will act reasonably and fairly. *See Park Ave. Clinical Hosp. v. Kramer,* 48 Misc.2d 826, 266 N.Y.S.2d 147, 152 (Sup.Ct.1966).

It is further provided that the arbitration must be conducted according to the Voluntary Rules of Labor Arbitration published by the American Arbitration Association (AAA Rules), unless modified by agreement of the parties. AMC 3.70.110(C)(6).[17] Additionally, it is provided that the arbitrator's decision must be reduced to writing and is subject to judicial review for abuse of discretion, fraud, or misconduct on the part of the arbitrator. AMC 3.70.110(C)(9). While the Municipality terms this standard of review "too limited," this arguably is a broader standard of review than the one that currently exists for arbitration decisions. *Nizinski v. Golden Valley Elec. Ass'n, Inc.*, 509 P.2d 280, 283 (Alaska 1973) (holding that non-statutory standard of review of labor-management arbitration award necessitates showing of arbitrator's gross negligence, fraud, corruption, gross error or misbehavior). *See also State v. Pub. Safety Employees Ass'n*, 798 P.2d 1281, 1287 (Alaska 1990) ("we believe it appropriate to apply the arbitrary and capricious standard when reviewing awards in compulsory interest arbitrations"); *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n*, 732 P.2d 1090, 1093 n. 5 (Alaska 1987). Other courts have recognized that broader grounds exist for vacating interest arbitration awards than grievance awards.[18]

The Municipality contends that while the arbitrator's decision is reviewable, the fact finder's findings are not and, thus the arbitrator's decision is insulated under the abuse of discretion standard, even if the findings are clearly erroneous or fail to include relevant facts. We find this criticism unpersuasive. Applying an abuse of discretion standard involves reviewing the whole record. *Peter Pan Seafoods, Inc. v. Stepanoff*, 650 P.2d 375 (Alaska 1982). Therefore, a review of the arbitrator's decision includes review of the factual findings.[19]

■ The Municipality's expression of its intent in enacting its binding interest arbitration ordinance also provides a "standard" limiting the arbitrator's discretion. *See City of East Providence v. Local 850*, 117 R.I. 329, 366 A.2d 1151, 1155 (1976) (concluding that legislative statement of public policy to be served constitutes a standard to guide arbitrators); *Harney v. Russo*, 435 Pa. 183, 255 A.2d 560, 563 (1969) (finding that legislative purpose to foster peaceful relations and to protect the public from police and fire fighters strikes provided sufficient standards); *DeArmond v. Alaska State Dev. Corp.*, 376 P.2d 717, 723 (Alaska 1962) (holding that statement of act's purpose is a standard to guide the board); *City of Richfield v. Local No. 1215, Int'l Ass'n of Fire Fighters*, 276 N.W.2d 42, 45 (Minn.1979) (finding that policy statement to promote good employer/employee relations and to secure guarantees for general welfare provides an adequate standard to guide arbitrators). Here definite and certain policies guide the arbitrator. For example, the Municipality desires to provide "appropriate compensation in line with prevailing practices and pay in the Anchorage area and municipal governments generally," *see* AMC 3.30.011(E), and "[t]o provide security of tenure for municipal employees subject to need for work done, availability of funds, and continued effective performance and acceptable personal conduct of the employees." AMC 3.30.011(D). Also, the Municipality states

---

17. The AAA Rules provide additional procedural standards to control discretion. For example, the AAA Rules provide for notification of the time and place for the hearing, see Rule 19, for representation by counsel, see Rule 20, for stenographic recording, see Rule 21, for testimony under oath, see Rule 24, and for a written decision, see Rule 38. *See Fairview Hosp. Ass'n v. Pub. Bldg. Serv.*, 241 Minn. 523, 64 N.W.2d 16 (1954). In the instant case, the arbitrator has no personal interest in the subject of the arbitration, nor can the arbitrator have a personal interest under AAA Rules. *See* AAA Rule 11, 17.

18. The cases cited by the Municipality to support its argument that the standard of review is inadequate involved grievance arbitration, not interest arbitration. *See* Anderson & Krause, *supra* note 1, at 166.

19. The AAA rules guarantee the availability of a record for the court. *See* AAA Rule 21, 28, 29, 41.

that, "[t]he municipality declares that it is its policy to promote harmonious and cooperative relations between the municipality and its employees and to protect the public by assuring orderly and effective operations of government." AMC 3.70.020(A).

In light of the elaborate and detailed structure which guides the arbitrator's decisions and guards against arbitrary action we conclude that the Code's delegation of legislative authority is constitutional.[20]

### C. Does the Potential for Judicial Enforcement of an Arbitrator's Award under AMC 3.70.110(C)(9) Constitute an Unconstitutional Delegation of the Assembly's Power to Appropriate Funds?

■ The crux of this subsidiary issue is set out in the following question which we posed to the parties for supplemental briefing:

Do the provisions of 3.70.110(C)(9) of the Anchorage Municipal Code constitute an unconstitutional delegation of the Assembly's legislative authority insofar as the arbitrator's decision "shall be final and binding on the parties," and such decision is thereafter enforceable in the courts of Alaska with the potential consequence of an allocation of the municipality's resources without a prior Assembly appropriation?

In response to our request for supplemental briefs on this point, the Municipali-

ty contends that AMC 3.70.110(C)(9) is unconstitutional because the arbitrator's decision binds the Assembly "regardless of whether the arbitrator's decision calls for wages or other economic terms that would exceed the appropriations that the Assembly has made."

In its supplemental brief, APDEA primarily argues that the arbitrator's award does not amount to an appropriation and thus does not offend any constitutional or statutory provision because it neither sets the size of the police force nor determines job classification assignments of the various bargaining unit members.[21]

IAFF, in its supplemental brief, takes the position that "an action to enforce an award does not obligate the court to order appropriation of municipal funds, but only to mandate that the executive branch observe the wage rates, hours, and terms and conditions of employment established under the award."[22]

In its supplemental reply brief, the Municipality concedes that if there were adequate controls over the arbitrator's exercise of authority, then there might not be a question as to the constitutionality of the delegation provided for in AMC 3.70.-110(C)(9). Since adequate standards and controls are lacking, however, the Municipality reasserts its initial contention that the ordinance permits the allocation of municipal resources without Assembly appropriations. The Municipality asserts that

---

**20.** We note that this is a subject matter area of complexity (i.e. guidance of arbitrators in dealing with the complex and potentially volatile issues that might arise during labor negotiations) which has the capacity for grave and harmful effects on the public welfare. *City of Detroit v. Detroit Police Officers Ass'n*, 408 Mich. 410, 294 N.W.2d 68, 94 (1980); *Superintending School Comm. v. Bangor Educ. Ass'n*, 433 A.2d 383, 387 (Me.1981); *City of Richfield v. Local No. 1215, IAFF*, 276 N.W.2d 42, 47 (Minn.1979).

**21.** APDEA further argues that the arbitrator's award does not equate to an authorization for the dispersal of any certain sum of the municipality's resources since "[i]t has never been pled by the ... [Municipality] that there was or is a minimum manning requirement within any of the contracts submitted under the process outlined in AMC 3.70.110(C)(9)."

**22.** IAFF elaborates on this contention in the following manner:

While an interest arbitration award may set wage scales for particular municipal employees, it imposes no obligation upon the Municipality to continue the employee complement in existence at the time the award is issued in order to fund the award at that employee total. In other words rates are final and binding; an appropriation by the Assembly which does not fund the award as to all employees does not render the award unenforceable. It merely requires the Municipality's executive branch to implement personnel decisions that will accommodate the wage rate against the appropriated amount by laying off employees, reducing the hours of employees, or shifting resources from other areas within the discretion of the executive to make up for the budgetary shortfall.

the ordinance constitutes an improper delegation of authority and violates Anchorage's Home Rule Charter.[23] As to IAFF's suggestion that the arbitrator's award is binding on the Executive but not upon the Assembly the Municipality responds:

> However, if that were the case, it would certainly eliminate the problem of making allocations without appropriations. It would also eliminate the delegation defects, at least as to the economic terms of the agreements, since those terms would be subject to Assembly approval. However, this interpretation would also eliminate the portion of the ordinance that makes the arbitration awards "final and binding" for police and fire fighters.

Although the question posed to the parties for supplemental briefing presents a close and difficult issue we conclude that the possibility of judicial enforcement of a final and binding arbitration decision does not constitute an unconstitutional delegation of the Assembly's legislative powers.[24] Given the fact that the Anchorage Municipal Charter does not contain any express limitation upon the Assembly's power to delegate its legislative functions; the fact that the delegation in question is relatively narrow and relates to the complex and potentially volatile subject of labor relations in the public sector; the fact that adequate standards to guide the arbitrator's decision making are part of the delegation; and the fact that the arbitrator's decision is subject to discrete procedures and to judicial review; we conclude that the provisions of AMC 3.70.110(C)(9) do not constitute an unconstitutional delegation of the Assembly's legislative power, nor are the provi-

sions violative of the Charter. More specifically, we conclude that the constitutionality of the delegation embodied in AMC 3.70.110(C)(9) is not negated by the fact that the arbitrator's final decision is reviewable and enforceable in the courts of Alaska. In fact, we note that the enforcement of an arbitration award by the court and the resultant need to allocate resources to satisfy the award does not differ materially from the need to allocate resources to satisfy a court's award of damages in a tort action against a municipality. The latter situation does not raise the specter of improper delegation of the legislative power of appropriation. *See generally* AS 09.-65.070; *City of Kotzebue v. McLean,* 702 P.2d 1309, 1311 (Alaska 1985).

As was pointed out by the authors of *Interest Arbitration: The Alternative to the Strike:*[25]

> Opponents of interest arbitration argue that, since an arbitration panel may issue an award which raises the cost of municipal services, the enabling statute is an inappropriate delegation of taxing power. Courts have rejected this argument, finding that a tax does not derive from an act merely because it "may result in the need for ... taxation." Judge Fuchsberg of the New York Court of Appeals clarified this distinction by observing that, although arbitration awards may impact on the cost of municipal services the municipality remains free to choose the method of meeting these costs.
>
> *This observation accords with the obvious fact that, in the public sector, neither arbitration awards nor collec-*

---

23. On this point the Municipality further argues that retained discretion would prove illusory since "[t]here is no assurance that an arbitrator's award would not both increase wages and through other contract provisions, limit the Municipality's ability to respond to the increases without staffing changes."

24. The fact that the arbitration decision is enforceable in the courts of Alaska is not violative of the separation of powers doctrine. The separation of powers doctrine has been recognized in Alaska. *See Pub. Defender Agency v. Superior Court, Third Judicial Dist.,* 534 P.2d 947 (Alaska 1975); *Continental Ins. Cos. v. Bayless & Roberts, Inc.,* 548 P.2d 398, 410–11 (Alaska 1976);

*Bradner v. Hammond,* 553 P.2d 1 (Alaska 1976); *Abood v. Gorsuch,* 703 P.2d 1158 (Alaska 1985). It is within the judicial power to review and enforce arbitration awards. Uniform Arbitration Act, AS 09.43.010 –.180; *see Alaska State Hous. Auth. v. Riley Pleas, Inc.,* 586 P.2d 1244, 1247 (Alaska 1978); *see generally, Willis Flooring, Inc. v. Howard S. Lease Constr. Co. & Assocs.,* 656 P.2d 1184 (Alaska 1983); *Anchorage Med. & Surgical Clinic v. James, M.D.,* 555 P.2d 1320, 1322 (Alaska 1976); *Univ. of Alaska v. Modern Constr., Inc.,* 522 P.2d 1132, 1139 (Alaska 1974).

25. Anderson & Krause, *supra* note 1, at 171–72.

*tive bargaining agreements are self-implementing. If legislative authorization to finance a contract or an arbitration award does not already exist, the executive must secure funding from the legislature, reduce services, decline to fill vacancies, or take other management action to implement the agreement. The important point remains that the legislature must, either before or after contract negotiations, determine the appropriate level for government operations and provide the required funding.*[26]

(Footnotes omitted, emphasis added.)

Additionally, we think the following authorities support the conclusion we reach today. In *Town of Arlington v. Board of Conciliation and Arbitration*, 370 Mass. 769, 352 N.E.2d 914 (1976) the court, in holding that the delegation to añ arbitration panel was not unconstitutional, stated:

Nor do we view the act as setting up the members of the arbitration panel as an appropriating authority. To establish salaries is not to appropriate the funds for them ... "[E]stablishment of salaries of municipal officers and employees is an act that is legislative in nature and may be ... delegated to the board or officer who appoints them or to some other board or officer." ... Furthermore, it is settled that the Legislature has the power to create a numerical obligation requiring the outlay of funds and that this power may be delegated if the

delegation is otherwise proper and lawful. *See Board of Health of North Adams v. Mayor of North Adams*, 368 Mass. 554, 334 N.E.2d 34 (1975).

*Id.* 352 N.E.2d at 920 (citations omitted).[27] *See also, City of Amsterdam v. Helsby*, 37 N.Y.2d 19, 371 N.Y.S.2d 404, 332 N.E.2d 290, 307 (1975) (Fuchsberg, J., concurring); *County of Allegheny v. Allegheny Court Ass'n of Professional Employees*, 517 Pa. 505, 539 A.2d 348 (1988).[28]

## II. WAS AN AWARD OF FULL ATTORNEY'S FEES AN ABUSE OF DISCRETION?

The superior court awarded full attorney's fees to APDEA. No findings were made to support this award and it differed from IAFF's award of only 70% of its attorney's fees. We conclude that the attorney's fees award issue must be remanded to the superior court for explanatory findings of fact.

▆ Where there is no monetary recovery Civil Rule 82 provides that the court may use its discretion in fixing attorney's fees in a reasonable amount. However, "[t]he purpose of Civil Rule 82 is to *partially* compensate a prevailing party for the costs and fees incurred where such compensation is justified and not to penalize a party for litigating a good faith claim." *Malvo v. J.C. Penney Co., Inc.*, 512 P.2d 575, 588 (Alaska 1973) (emphasis added). We have held "an award of full attorney's fees is 'manifestly unreasonable'

---

**26.** *See also Dearborn Fire Fighters Union v. City of Dearborn*, 394 Mich. 229, 231 N.W.2d 226, 230 (1975) (holding that arbitration awards may be implemented by an increase in taxes or a decrease in municipal expenditures); *City of Spokane v. Spokane Police Guild*, 87 Wash.2d 457, 553 P.2d 1316, 1319 (1976) (*en banc*) (stating that an award which "may result in the need for local taxation, does not itself impose any 'burden or charge'").

**27.** The *Arlington* case involved a binding arbitration award which established wages, vacation pay, sick leave, and other conditions of employment for police and fire fighters. The town refused to proceed in accordance with the award and suit was instituted to enforce the award.

**28.** In *Pub. Employees Local 71 v. State*, 775 P.2d 1062, 1064 (Alaska 1989), we addressed the

question whether a collective bargaining agreement was subject to legislative approval of its monetary terms. We answered the question in the affirmative based on the terms of the statute. In so doing we went beyond statutory interpretation and suggested that legislative approval was mandated by the constitution, stating:

Additionally, under Alaska's constitutional system, funding of an agreement is constitutionally relegated to the legislature. Alaska Const. art. IX, § 13. The Public Employment Relations Act recognizes this constitutional requirement in AS 23.40.250(9).

*Id.* at 1064.

We now believe that this statement was unnecessary to the decision in *Local 71*, constitutes overbroad dictum, and is hereby disapproved.

in the absence of a bad faith defense or vexatious conduct by the losing party." *State v. Univ. of Alaska*, 624 P.2d 807, 817 (Alaska 1981). While a deviation from the schedule of fees must be explained, see *Stefano v. Coppock*, 705 P.2d 443, 446 (Alaska 1985), if the fee schedule does not apply, the trial court need not set forth its reasons for its award. *Wickwire v. Arctic Circle Air Servs.*, 722 P.2d 930, 935 (Alaska 1986). However, full attorney's fees must generally be explained. *Moses v. McGarvey*, 614 P.2d 1363, 1368–69 (Alaska 1980).

 Here the superior court noted the anomaly of the plaintiff asserting that "one of its ordinances is unconstitutional and that the municipality cannot follow its own law...." Assuming this explains the award of full attorney's fees, it is error. While the Municipality challenged its own ordinance in a declaratory action, this does not constitute bad faith or vexatious conduct. A city has standing to contest the constitutional validity of a provision of its own charter. *Doyle v. City of Troy*, 51 A.D.2d 845, 380 N.Y.S.2d 789 (Sup.Ct.1976) (city has standing to contest the constitutionality of its own charter provision providing minimum salaries for fire department employees). Moreover, public officers can raise a question of "general and vital interest," *State ex rel. Bruestle v. Rich*, 159 Ohio St. 13, 110 N.E.2d 778, 783–84 (1953).

 The disparate awards of attorney's fees in themselves are an additional reason to support a remand. *See Irving v. Bullock*, 549 P.2d 1184, 1190 (Alaska 1976), *modified on other grounds, Elisovsky v. State*, 592 P.2d 1221, 1228 (Alaska 1979). APDEA argues that *Irving v. Bullock* does

not apply because it relates to the first paragraph of Civil Rule 82(a)(1), not the last paragraph. However, when two parties who are aligned together are awarded differing percentages of attorney's fees under Rule 82(a)(2) we think such a disparate amount constitutes an abuse of discretion, unless fully explained.

Before the superior court IAFF and APDEA made essentially the same arguments in their motions for attorney's fees and costs, stressing the relative importance of the litigation to the parties and the difficulty of the issue. The superior court gave no reason for the different awards of attorney's fees. APDEA attributes the difference to a reduction of various expenses by the superior court from IAFF's award. Yet, IAFF's ultimate award does not reflect exactly a reduction of the contested amounts. Moreover, the superior court did not explain its reduction of IAFF's award in terms of a reduction for certain expenses.

## CONCLUSION

The superior court's grant of summary judgment is AFFIRMED. The superior court's grants of attorney's fees are VACATED and the matter REMANDED for the purpose of permitting the superior court to enter appropriate findings of fact and/or explanation and to make whatever redetermination of attorney's fees it deems appropriate in the circumstances.