SOUTHWICK, P.J.,
for the Court:
¶ 1. Tyrone L. Callahan was convicted of felony D.U.I. in the Circuit Court of Harrison County. On appeal, Callahan argues that the State failed to prove the accuracy of the intoxilyzer and that the verdict was against the overwhelming weight of the evidence. We disagree and affirm.
FACTS
¶ 2. In February 1998 a Gulfport police officer stopped Callahan for speeding and following too closely. Once Callahan got out of the vehicle, the officer noticed that Callahan’s eyes were watery and his pupils were dilated in addition to having the smell of alcohol on his breath. The officer then asked Callahan to step in front of the officer’s vehicle for videotaping purposes.
¶ 3. At this time, several field sobriety tests were performed. Then a portable breath test was given. That test gave a positive indication for alcohol. Callahan was arrested and driven to the police station where an intoxilyzer test was performed. His blood alcohol content registered 0.119 percent. Callahan had two prior convictions for driving under the influence and thus this time was indicted for a felony. He was convicted after a jury trial and his appeal has been deflected here.
DISCUSSION

1. Admissibility of Certificates

¶ 4. Callahan argues that the State failed to prove the accuracy of the intoxi-lyzer. His argument centers on the documentary evidence used to authenticate the machine’s calibration. Introduced were official public records of the most recent calibration of the intoxilyzer and also of the credentials of the person who had performed the inspection.
¶ 5. By statute, the State Crime Laboratory must at least every calendar quarter have the machines inspected that chemically analyze the alcohol content in a person. Miss.Code Ann. § 63-11-19 (Rev.1996). The State was allowed over Callahan’s objection to admit two certificates, one dated January 5, 1998 and the other dated February 17, 1998. Each certificate found the machine to be in working condition and the calibration to have “met acceptable standards.” Since the incident occurred on February 1, 1998, these two certificates were offered as proof that the machine was in proper working condition on the date Callahan was tested. These calibration documents were certified as true copies by the clerk of the Gulfport Municipal Court.
¶ 6. Callahan objected, arguing that the certificates themselves were documents from a state official, namely the Mississip *422 pi Department of Public Safety whose technician examined the machines. For that reason they could not be certified as correct by the municipal clerk even if they were on file with the clerk’s records. Instead, Callahan insisted that copies must be obtained from the Department of Public Safety and certified as correct by some official there.
¶ 7. Under the rules of evidence, any “document bearing a seal purporting to be that of ... any State, ... or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution are self-authenticating.” M.R.E. 902(1). These documents bore the seal of the Mississippi Department of Public Safety and were signed by an agent of the Department. Thus originals of the certificates would have been self-authenticating documents. These however were copies.
¶ 8. The evidentiary rules also provide that no extrinsic evidence of authenticity is needed prior to admitting into evidence “a copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying ... pursuant to statutory authority.” M.R.E. 902(4).
¶ 9. The Municipal Clerk for Gulfport, in whose office a copy of the official record of calibration had been filed, certified that the documents were true copies. There is nothing in Rule 902(4) that states the certified copies must come from the level of government or specific agency who issued the document. It is only necessary that the office where an official document is authorized by law to be filed, certify as to authenticity. Thus if a municipal clerk’s statutory duties include the maintaining of records of the calibration of the city’s in-toxilyzer machines, then a certified copy of such a record is admissible into evidence.
¶ 10. We find no significant doubt that a municipal clerk is the proper office to maintain possession of the certificate. The State Crime Laboratory is required to issue “its certificate to verify the accuracy” of the intoxilyzer. Miss.Code Ann. § 63-11-19 (Supp.2000). Though that statute does not state what happens to the certificate after it is issued, by general statute the municipal clerk “shall file in his office and preserve all records and papers pertaining to the business of the municipality.” Miss.Code Ann. § 21-15-19 (Supp. 2000). Thus when a city’s intoxilyzer has been inspected and a certificate of accuracy issued, the municipal clerk’s office is fairly seen as the statutorily authorized location for the certificate to be filed.
¶ 11. We find no error in the clerk’s certification of the inspection documents as correct copies of records on file in her office. They also are self-authenticating and admissible.
¶ 12. An additional objection was raised as to a different document that attempted to prove the inspecting officer’s authority. The document was entitled “Certifier of Calibration” and was issued by the State Crime Laboratory. It certified that Ary Amistead, the officer who signed the first two certificates that we have discussed, had been trained and was authorized to inspect the machines. The argument at trial was that even though it had a seal and was signed by an official at the State Crime Laboratory, it was the kind of document that anyone could get prepared at a print shop. This certificate was not shown to have been on file with the municipal clerk, and it was not certi *423 fied as a true copy by that clerk or by anyone else.
¶ 13. We cannot determine from the record whether the original of this document was offered into evidence and then the copy that we have examined substituted for the original. Therefore we cannot determine whether Rule 902(1) regarding originals of domestic public documents under seal is applicable. The other rule that we discussed for the calibration certificates is clearly irrelevant, because there was no certification by any custodian of public records that it was a true copy. Therefore we cannot find on this record that the certification that Armistead was properly trained was admissible. We also cannot find that it was necessary to introduce the document.
¶ 14. The only arguable reason to admit this certificate was to prove Armistead’s authority to inspect the machines and to sign inspection certificates such as the two introduced here. However, the inspection certificates are public documents under official seal. As signed documents under seal, they are self-authenticating. A self-authenticating document does not need any extrinsic evidence to prove authenticity before being admissible. M.R.E. 902. It was, therefore, usable in evidence as the Department of Public Safety’s certification that the machines had been tested and found to be accurate. Nothing in the rules suggest that when an official public record has been admitted, that the party offering the document still must prove the authority of the person named in the certificate. If Armistead’s authority to inspect the machines must be shown by the certificate from the State Crime Lab, then the person signing on behalf of the crime lab that Armistead had been trained — shown to be John M. Allen — would also need to have his or her authority shown. Whoever certified Allen’s role might then need to be certified. At some stage the train of certificates might come to a logical end, but we find no reason under the rules to ever form the train.
 ¶ 15. The State must prove the machine’s accuracy. McIlwain v. State, 700 So.2d 586, 590 (Miss.1997). Here the State properly introduced the inspection certificates to show accuracy. The certificates of accuracy are necessary as proof of the accuracy of the machines. Id. at 591. It is only when the certificates are unavailable or a genuine issue exists as to authenticity, does the calibrating officer have to be available for cross-examination and give testimony on the calibration. Id.
¶ 16. In the present case, there is no genuine issue as to the authenticity of the inspection certificates. The two inspection certificates are adequate proof of the machine’s accuracy.

2. Weight of Evidence

¶ 17. Callahan urges that the verdict was against the overwhelming weight of the evidence. He contends that the videotape, which the State offered into evidence, clearly showed that he was not intoxicated and that an unbiased juror would have had a reasonable doubt about the accuracy of the intoxilyzer after viewing the videotape.
¶ 18. When Callahan sought a new trial, he raised an issue to be decided by the trial court’s sound exercise of discretion. We will find error in the denial of such a motion only if “an unconscionable injustice” otherwise would occur. McClain v. State, 625 So.2d 774, 781 ( Miss.1993). It is the jury that is “charged with the responsibility of weighing and considering conflicting evidence and the credibility of witnesses.” Harris v. State, 527 So.2d 647, 649 (Miss.1988).
*424 ¶ 19. The record reveals that there was competent evidence from which the jury could make the determination that Callahan was driving under the influence. The State’s evidence included the intoxilyzer result, the videotape and the police officer’s testimony. Taking the State’s evidence and accepting it as true, we find that the jury’s verdict was not against the overwhelming weight of the evidence. Therefore we affirm the conviction.
¶ 20. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION OF FELONY D.U.I. AND SENTENCE OF FIVE YEARS TO RUN CONSECUTIVE WITH ANY SENTENCES NOW SERVING, SAID SENTENCE BEING WITHOUT PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
McMILLIN, C.J., KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, MYERS and CHANDLER, JJ„ concur.