# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-KM-01060-COA

KIMBERLEE MICHELLE BRATCHER                                      APPELLANT

v.

STATE OF MISSISSIPPI                                              APPELLEE

DATE OF JUDGMENT:           07/09/2014
TRIAL JUDGE:                HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:  MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     WILLIAM P. FEATHERSTON JR.
ATTORNEY FOR APPELLEE:      JOHN G. SIMS III
DISTRICT ATTORNEY:          MICHAEL GUEST
NATURE OF THE CASE:         CRIMINAL - MISDEMEANOR
TRIAL COURT DISPOSITION:    CONVICTED OF DRIVING UNDER THE
                            INFLUENCE AND SENTENCED TO
                            FORTY-EIGHT HOURS IN THE CUSTODY
                            OF THE SHERIFF OF MADISON COUNTY
                            AND TO PAY A FINE OF $900
DISPOSITION:                AFFIRMED – 10/20/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Kimberlee Bratcher appealed to this Court after the Madison County Circuit Court affirmed her conviction for driving under the influence (DUI). She challenges the sufficiency of the evidence presented against her.

¶2.     Finding sufficient evidence to support the conviction, we affirm.

FACTS

¶3.    During the early morning of February 2, 2012, Officer Jim Mack Jr., with the City of Madison Police Department (MPD), stopped Bratcher for speeding. During the stop, he learned that the Vicksburg Police Department had issued a warrant for Bratcher's arrest, and he asked her to exit her vehicle. When Bratcher exited the vehicle, Officer Mack observed her stagger, and this observation caused him to believe that she was under the influence of alcohol. Consequently, he called Officer Drew Hall, an MPD DUI officer, to the location of the stop.

¶4.    After arriving at the scene, Officer Hall administered several field sobriety tests and two portable breath tests (PBT) to Bratcher. Based on the results of the sobriety tests and the PBTs, Officer Hall also believed that Bratcher was under the influence of alcohol, and he placed her under arrest before transporting her to the MPD station. At the police station, after obtaining Bratcher's consent, Officer Hall administered the Intoxilyzer 8000 breath test to her. He later charged her with DUI after she registered a .08 percent blood-alcohol concentration. During trial in the County Court of Madison County, the court admitted Bratcher's breath-test results and found sufficient evidence to support a finding that Bratcher was guilty of DUI.

## DISCUSSION

¶5.    "The standard of review for determining whether the evidence is legally sufficient to sustain a conviction in a case tried without a jury is the same as the standard of review[] [of]

2

a denial of a motion for a judgment notwithstanding the verdict." *Robinson v. State*, 794 So. 2d 293, 296 (¶12) (Miss. Ct. App. 2001). "This Court may only reverse 'where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty.'" *Id.* (quoting *Reed v. State*, 749 So. 2d 179, 180 (¶3) (Miss. Ct. App. 1999)).

¶6. The county court made it clear that Bratcher was "convicted [under Mississippi Code Annotated section 63-11-30(1)(c) (Supp. 2014)[1]] because she did submit to a breath test[,] and it did come up at .08." And, on appeal, the circuit court found that the State had proved Bratcher's guilt under section 63-11-30(1)(c) beyond a reasonable doubt. Neither court discussed whether Bratcher violated Mississippi Code Annotated section 63-11-30(1)(a) (Supp. 2014).[2] We, therefore, limit our discussion to whether there was sufficient evidence to support her conviction under section 63-11-30(1)(c).

    I.    *Margin of Error*

¶7. On appeal, Bratcher argues that there was insufficient evidence to support her conviction because the county court failed to factor in the "inherent" .005 margin of error of the dry-gas-ethanol-standard solution (dry gas) used to calibrate the intoxilyzer and/or the

---

[1] Section 63-11-30(1)(c) makes "[i]t . . . unlawful for any person to drive or otherwise operate a vehicle within this state who . . . has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons who are above the legal age to purchase alcoholic beverages under state law[.]"

[2] Section 63-11-30(1)(a) prohibits driving under the influence of intoxicating liquor even though there are no results from an intoxilyzer machine to prove it. In other words, section 63-11-30(1)(a) permits common-law-DUI convictions.

alleged .02 margin of error of the intoxilyzer. She cites *Barcott v. State of Alaska, Department of Public Safety, Division of Motor Vehicles*, 741 P.2d 226 (Alaska 1987), as support for her argument that "it [was] a denial of due process of law [for the county court] to refuse to consider evidence of [the] margin[s] of error." She also cites the "No. 0.020 Agreement" set forth in the Mississippi Crime Laboratory Implied Consent Policies and Procedures (ICPP) as support for her argument that "there is a margin of error in the testing process of the [i]ntoxilyzer of .02." She opines that if the county court had properly factored in either of those values, then the court would have found insufficient evidence to support her conviction.

¶8. In response, the State argues that there was sufficient evidence to convict Bratcher of DUI. The State further argues that there is no recognized margin of error in the intoxilyzer. The State points out that during trial, Bratcher's expert witness, Dr. Robert Hawk, testified that the intoxilyzer "gave a true indication of Bratcher's [blood-alcohol concentration, and he] admitted that the intoxilyzer is a very smart machine . . . that . . . worked perfectly." Also, the State argues that the No. 0.020 Agreement "is not a margin of error at all, but rather a tolerance value."

¶9. During trial, Dr. Hawk quoted section 1702.100 of the ICPP, which defines the No. 0.020 Agreement as an "[o]perational message printed when consecutive subject tests differ by more than 0.020." Dr. Hawk explained that "if [Bratcher's] two test results [had] disagreed by more than .02, there [would have been] no [No.] [0].02[0] [A]greement," and

4

Officer Hall would have had to administer the test a second time. Thus, Dr. Hawk opined that by way of the No. 0.020 Agreement, "the State of Mississippi recognizes that there can be a variance of up to .02 on two tests on the same individual [and, therefore, recognizes] a margin of error in the testing process of .02."

¶10. After reviewing the record, we agree with the State that the No. 0.020 Agreement is not a margin of error. By definition, it is an internal safeguard that causes the intoxilyzer to void breath-test results when it produces results that differ by more than .02. Bratcher has cited no authority that leads us to conclude otherwise. As a result, we find that the county court did not err in failing to consider a .02 margin of error, and we only discuss the .005 margin of error of the dry gas.

¶11. During trial, Dr. Hawk testified that the calibration checks conducted on the intoxilyzer immediately before Bratcher's breath test revealed dry-gas values of .081% and .08%. He also testified that the two certificates of calibration for the intoxilyzer, dated February 1, 2012, and March 1, 2012, revealed dry-gas values of .081%. He admitted that those values were acceptable because they were within plus or minus .005 of the standard dry-gas value of .08%. Without testifying that the dry gas was not properly calibrated, Dr. Hawk simply suggested that "if you don't have a certified [dry gas], then you're going to have some problems." Notwithstanding that testimony, Dr. Hawk suggested that the State's failure to produce a certificate of calibration for the dry gas was indicative of defective test results.

5

¶12.   As stated, Bratcher relies on *Barcott*.  In that case, after a police officer stopped the defendant for speeding, the officer detected the odor of alcohol on the defendant's breath. *Barcott*, 741 P.2d at 227.  Consequently, the officer arrested the defendant.  *Id*.  Before administering the breath test to the defendant, using a dry gas known to contain .103% alcohol, the officer performed a preliminary control test on the breath-testing machine.  *Id*. The preliminary test produced a reading of .104%, revealing a .001% upward deviation from the amount of alcohol contained in the dry gas.  *Id*.  After performing the preliminary test, the officer administered the breath test to the defendant, and the test produced a reading of .10%, which exceeded the maximum legal limit.  *Id*.  Following the breath test, the officer performed a follow-up control test on the machine, which produced a reading of .097%.  *Id*. Based on the .10% reading, the Department of Public Safety revoked the defendant's driver's license.  *Id*. at 228.  After the revocation, the defendant appealed to the Supreme Court of Alaska, arguing that the lower court's failure "to consider the [machine's] margin of error was a denial of his constitutional right to due process of law."  *Id*.  On appeal, the Alaska Supreme Court found that "[t]o deny a driver a reasonable opportunity to test the reliability and credibility of the breath test is to deny him a meaningful and fundamentally fair hearing."  *Id*.  The court also found that "due process require[d] consideration of the margin of error inherent in the breath[-]testing procedure[.]"  *Id*. at 229.  It concluded that "correction of a .001% upward deviation would [have] placed [the defendant's] test result below the legal limit, [which, at the time that the case was decided, was .10%,] and the

6

breath test could not have served as the basis for revoking [his] license." *Id*.

¶13.    *Barcott*, which is not binding authority, stands for the proposition that due process "mandates consideration of the inherent margin of error in any blood[-]alcohol testing procedure which is to serve as the basis for driver's license revocation." *Id.* at 230. However, it does not stand for the proposition that a court must weigh evidence of a margin of error in a defendant's favor. It is noteworthy that the Alaska Supreme Court abandoned its reasoning in *Barcott* when it decided *Bushnell v. State*, 5 P.3d 889 (Alaska Ct. App. 2000).

¶14.    In *Bushnell*, the Alaska Supreme Court relied on an Alaska statute that provided:

> Except for an offense under AS 28.35.280, [which governs the operation of a vehicle of a minor after consuming alcohol,] if an offense described under this title requires that a chemical test of a person's breath produce a particular result, and the chemical test is administered by a properly calibrated instrument approved by the Department of Public Safety, the result described by statute is not affected by the instrument's working tolerance.

*Id*. at 890. The *Bushnell* court held that "the legislature [had] implicitly found that a working tolerance of .01[%] of a properly calibrated instrument was 'tolerably inaccurate[,]'" and "irrelevant to [a] driver's guilt" in regard to a DUI charge. *Id*. at 891.

¶15.    After a careful review of the record, we find that Bratcher's contention that the county court erred in failing to consider the .005 margin of error is without merit, primarily because there is no evidence that the court failed to do so. Once evidence of the margin of error was before the court, it, as the fact-finder, was entitled to weigh that evidence as it saw fit. The fact that the county court did not weigh the evidence in Bratcher's favor does not

necessarily establish that the court failed to consider it. This issue is without merit.

II. *Admission of Intoxilyzer Results*

¶16. "The standard of review for admission of evidence is abuse of discretion." *Debrow v. State*, 972 So. 2d 550, 552 (¶6) (Miss. 2007) (citation omitted). However, when a question of law is raised, the applicable standard of review is de novo. *Id*.

¶17. Bratcher argues that the county court erred in admitting the breath-test results because the State violated Mississippi Code Annotated section 63-11-19 (Rev. 2013) by failing to prove that the dry gas used in the Intoxilyzer 8000 was properly calibrated. In response, the State argues that the trial court did not err in admitting the results. The State also argues that it complied with section 63-11-19 by establishing that Officer Hall followed the proper procedures during the administration of the breath test, that Officer Hall was certified to administer the test, and that the intoxilyzer was properly calibrated before the administration of the test. The State further argues that it was not required by law to establish that the dry gas was calibrated.

¶18. Before the county court could properly admit the results of the breath test, the State had to establish that "[(]1) proper procedures were followed[;] [(]2) . . . the operator of the machine was properly certified to perform the test[;] and [(]3) . . . the accuracy of the machine was properly certified. *McIlwain v. State*, 700 So. 2d 586, 590 (¶18) (Miss. 1997) (citation omitted); Miss. Code Ann. § 63-11-19. The State met these requirements during Officer Hall's testimony.

¶19. Officer Hall testified that after arriving at the MPD station, he waited at least twenty

8

minutes before administering the breath test to Bratcher. During his testimony, the court admitted into evidence a two-year permit issued by the Mississippi Department of Public Safety (MDPS) to Officer Hall in June 2011, authorizing him to conduct analyses of breath specimens to determine alcohol content.[3] The court also admitted the aforementioned certificates of calibration showing that the intoxilyzer was calibrated as of February 1, 2012, and March 1, 2012. The certificates of calibration stated that the "instrument was certified to meet acceptable standards of accuracy."

¶20. Bratcher's sole argument is that the court committed error in admitting the breath-test results because the State was required to prove that the dry gas used in the calibration process—as opposed to the machine itself—had been calibrated. She cites *Callahan v. State*, 811 So. 2d 420 (Miss. Ct. App. 2001), as support for this argument. However, in *Callahan*, we found no merit to the defendant's assertion that the State had failed to prove the accuracy of the machine used to administer his breath test by failing to submit certificates of calibration that were obtained from MDPS and certified by an official thereof. *Id*. at 422 (¶¶6-11). This Court held that because the State had properly proved the machine's accuracy by producing certificates of calibration that "bore the seal of [MDPS] and were signed by the agent of the Department, . . . there [was] no genuine issue as to the authenticity of the [calibration] certificates." *Id*. at 422-23 (¶¶7,16). In this case, the authenticity of the certificates of calibration is not at issue, and *Callahan* is not relevant. This issue is without merit. Finding sufficient evidence to support Bratcher's conviction, we affirm.

---

[3] The permit expired on June 30, 2013.

¶21.   THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF DRIVING UNDER THE INFLUENCE AND SENTENCE OF FORTY-EIGHT HOURS IN THE CUSTODY OF THE SHERIFF OF MADISON COUNTY AND TO PAY A FINE OF $900 IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.

LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL AND JAMES, JJ., CONCUR. FAIR AND WILSON, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.