# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-01164-COA

**GREGORY D. PALMER**                                                                 **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                              **APPELLEE**

DATE OF JUDGMENT:               08/18/2017
TRIAL JUDGE:                    HON. CHRISTOPHER A. COLLINS
COURT FROM WHICH APPEALED:      NEWTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         OFFICE OF STATE PUBLIC DEFENDER
                                BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:          OFFICE OF ATTORNEY GENERAL
                                BY: ALICIA MARIE AINSWORTH
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                    AFFIRMED - 09/25/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Gregory Palmer was convicted of gratification of lust in the Newton County Circuit Court in violation of Mississippi Code Annotated section 97-5-23 (1) (Rev. 2014). Palmer was sentenced to fifteen years with three years suspended, leaving twelve years to serve in the custody of the Mississippi Department of Corrections (MDOC). Additionally, Palmer was ordered to serve three years of supervised probation under the supervision of MDOC, as well as register as a sex offender with the Mississippi Department of Public Safety in accordance with Mississippi Code Annotated section 45-33-25 (Rev. 2015).[1] Aggrieved,

---

[1] The judgment reads "Section 45-33-21, et seq.;" however, the applicable statute is section 45-33-25.

Palmer appeals.  Finding no error, we affirm.

**FACTS**

¶2.     Gregory Palmer was indicted and convicted of gratification of lust by a jury on August 7, 2017.  Palmer resided at the Hidden Springs Arabian Horse Farm, along with Tricia McGehee, Betty Skinner, and K.S.[2]  Skinner was the great aunt and legal guardian of K.S., and K.S. referred to her as her mother.  McGehee was Skinner's best friend who had Parkinson's disease and required constant care by others.  Skinner and Palmer met at church sometime between 2014 and 2015, and subsequently Palmer asked for work.  Skinner hired him as a farmhand and a caregiver for McGehee.  Palmer lived on the farm in a house about 200 yards away from the main structure where Skinner, K.S., and McGehee all resided.  During the 2016 school year, K.S. was home-schooled by Palmer's ex-wife Jennifer Palmer, but she quit.  Skinner asked Palmer if he would serve as K.S.'s teacher, and he agreed.

¶3.     Palmer and Jennifer had a fourteen-year-old daughter, K.P., who K.S. became friends with.  Palmer would often take the girls to the fair, to other events, and places around town.  On December 9, 2016, K.S., her brother, E.S., K.P., and another friend, H.H., went to Palmer's house for a sleep over.  The goal of the sleep over was to prepare clothes and jewelry to sell at the flea market that Palmer had agreed to take them to the next day.  In anticipation for the market, Skinner loaned Palmer her truck.  K.S. testified that shortly after arriving she watched a movie with Palmer and E.S., while K.P. and H.H. were in the

---

[2] We refer to the minor children by their initials to protect their identities.

bedroom "having fun." K.P. and H.H. testified that they were in the other room but not for the entire time. K.P. stated that the bedroom door was always open because she was not allowed to close it and that she was in and out of the living room watching the movie, sometimes staying in the living room for ten minutes at a time. H.H. stated that she was in the room with K.P. sorting items but still watched the movie. Both K.P. and H.H. claimed that K.S. was never alone with Palmer.

¶4.     K.S. stated that initially she was on the same couch as E.S., but Palmer called her to sit in the recliner chair with him on his lap. K.P. and H.H. testified differently. They claimed that K.S. was sitting on the arm of the recliner, not on Palmer's lap, and that her legs faced away from Palmer. H.H. claimed that K.S. only sat on the arm of the chair for fifteen or twenty minutes. K.S. stated that E.S. and Palmer had fallen asleep at the same point during the movie. She alleged that Palmer awoke, began to rub her shoulders, and touched her chest over and under her shirt thinking she was asleep. K.S. also asserted that Palmer touched her skin under her bra and inside of her underwear on her "private areas" without penetration.

¶5.     After the alleged incident, K.S. stated that she went into the room with K.P. and H.H. to separate the clothes and jewelry. Shortly after, Palmer came in the room and told the girls to calm down and go to bed. About twenty minutes later, K.S. testified that she snuck out of Palmer's house after sending a text message to Skinner asking her to come get her. Skinner said that she could not leave McGehee unattended and told K.S. to go back to sleep. K.S. replied that she was already coming through the woods, which was not her usual route

3

because she was afraid of spiders and would normally walk the paved way. When K.S. got home, she told Skinner about what happened, and Skinner asked Steve Diamond, a long time employee who also lived on the farm, to go get E.S. and her truck from Palmer's house. Diamond testified that K.S. came to his door "hysterical, terrified, shaking, and crying" to alert him to what was going on. After returning from Diamond's door, K.S. requested Skinner to call Jennifer so that she could protect K.P. from Palmer. Jennifer immediately came to the main structure on the farm. About thirty minutes after K.S. arrived back at her home, Skinner called the police.

¶6.     Police captain Johnny Martin was dispatched to the farm around 3 a.m. and was told that Palmer touched K.S.'s breast and inside her underwear. Martin stated that K.S. was crying but was not hesitant to tell him the allegations. Martin testified that he did not go to Palmer's house but did speak to Palmer on the phone about the allegations and the possibility of an arrest warrant. There was no inquiry about K.S.'s clothes or seizure of clothes for forensic analysis, no photos were taken, and none of the other people present in Palmer's house at the time were spoken to.

¶7.     The following Monday, December 12, 2016, K.S. spoke with Newton Police Investigator Bruce McCraw and wrote a statement. McCraw testified that K.S. was "very reluctant to tell the story" and that she seemed embarrassed or withdrawn about speaking to a stranger about the incident. McCraw stated that he did not go to Palmer's house, but he did talk to K.S. on the phone. About five days later, Palmer turned himself in to authorities.

4

During the trial, K.S. testified that she was fifteen years old, K.P. testified that she was fourteen years old, and H.H. testified that she was twelve years old. Palmer was convicted by a jury of gratification of lust. Aggrieved, Palmer appeals.

## STANDARD OF REVIEW

¶8. "The standard of review for determining whether the evidence is legally sufficient to sustain a conviction in a case tried without a jury is the same as the standard of review of a denial of a motion for a judgment notwithstanding the verdict." *Bratcher v. State*, 193 So. 3d 639, 640 (¶5) (Miss. Ct. App. 2015). "This Court may only reverse where one or more of the elements of the offense charged is lacking to such a degree that reasonable jurors could only have found the defendant not guilty." *Id.* (internal quotation marks omitted).

> When reviewing the denial of a motion for a new trial based on an objection to the weight of the evidence, appellate courts will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

*Sims v. State*, 127 So. 3d 307, 313 (¶19) (Miss. Ct. App. 2013). "The evidence is viewed in the light most favorable to the [verdict]." *Id.* "Questions of law are reviewed de novo." *Brown v. State*, 83 So. 3d 459, 461 (¶5) (Miss. Ct. App. 2012).

## DISCUSSION

> I.     *Whether the evidence was sufficient as to the element of Palmer's age at the time of the alleged offense.*

¶9. Palmer argues that the State did not affirmatively prove the required element of his age, therefore, the only remedy is reversal of his conviction and a rendering of acquittal. The

Mississippi Supreme Court has held that the defendant's age is an "essential element that must be proven for a defendant to be convicted under Section 97-5-23(2)," and it is the State who "bears the burden of proving a defendant's age as an affirmative fact." *Campbell v. State*, 125 So. 3d 46, 54 (¶20) (Miss. 2013) (internal quotation mark omitted). The State did not proffer any evidence to prove that Palmer was over the age of eighteen at the time of the alleged event.

¶10. But, this Court has also held that "[w]e must acknowledge that the jury may consider all reasonable inferences from the evidence." *Jenkins v. State*, 101 So. 3d 161, 171 (¶36) (Miss. Ct. App. 2012). Here, testimony was put forth that at trial Palmer had a fourteen-year-old daughter, along with testimony from Jennifer stating that they had been separated for fifteen years. This evidence, along with the fact the jury observed Palmer during the trial, is sufficient to show the jury could have reasonably inferred that Palmer was over the age of eighteen at the time of the alleged event. Accordingly, this issue is without merit.

> II. *Whether the guilty verdict was contrary to the overwhelming weight of the evidence.*

¶11. Palmer's second assignment of error is that the verdict was contrary to the weight of evidence. "In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Baker v. State*, 802 So. 2d 77, 81 (¶14) (Miss. 2001). In support of his claims, Palmer states that there was no police investigation, the only potential eye witnesses were

never interviewed by police, and no physical evidence or photographs were taken.

¶12. The Mississippi Supreme Court has held that "[t]he unsupported word of the victim of a sex crime is sufficient to support a guilty verdict where that testimony is not discredited or contradicted by other credible evidence." *Giles v. State*, 187 So. 3d 116, 125-26 (¶33) (Miss. 2016) (quoting *Massey v. State*, 992 So. 2d 1161, 1164 (¶14) (Miss. 2008)). "In addition, this evidence is sufficient especially if the conduct of the victim is consistent with the conduct of one who has been victimized by a sex crime." *Massey*, 992 So. 2d at 1164 (¶14) (internal quotation mark omitted). Furthermore, the Court held that a "victim's physical and mental condition after the incident and the immediate reporting of a crime is corroborating evidence." *Id.*

¶13. Here, K.S. testified that while watching a movie Palmer woke up, started rubbing her shoulder, and touched her chest over and under her shirt, as well as below the waist inside of her underwear. Minutes after the alleged incident, K.S. left the house and ran home through the woods, something that both Skinner and Diamond testified she would have never done if she was not in distress due to her fear of spiders. Additionally, K.S. immediately reported the incident to Betty and the police were called shortly after. Even days after the initial reporting, Investigator McCraw stated that K.S.'s behavior during the interview was consistent with the actions of a victim of a sex crime.

> Q: What was [K.S.]'s demeanor like when you met with her?
>
> A: [K.S.] seemed very reluctant to tell the story. She seemed embarrassed or withdrawn . . . .

7

Q: Is that an uncommon behavior in these types of cases - -

A: No.

Q: - - through your experience?

A: Not in my experience, no.

¶14. Based on these facts, we cannot say that the jury's verdict was so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.

## CONCLUSION

¶15. Finding that through reasonable inferences the jury could have determined Palmer was over the age of eighteen and that the overwhelming weight of the evidence supports the jury's verdict, we affirm the circuit court's denial of Palmer's motion for a new trial.

¶16. **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR.**